# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

ROBERT DANIEL COTTON, JR.
TINA MARIE COTTON,

Debtors.

Case No. 21-40847-MJH

**Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien**

This matter came before the Court on October 12, 2021 on Robert Daniel Cotton and Tina Marie Cotton's ("Debtors") motion to avoid the judicial lien held by Suzanne Moore against Debtors' residence located at 4128 South J Street, Tacoma, Washington (the "Real Property"). Ms. Moore objected to the motion. The Court considered the parties' arguments and took the matter under advisement. On November 4, 2021, the Court held a status conference, at which time the Court identified for the parties four discrete issues raised by Debtors' motion.[1] At the status conference, the parties requested the Court bifurcate and enter partial summary judgment on the following issues: (1) whether the Real Property is the type of property described in subparagraph (A), (B), (C), or (D) of 11 U.S.C. § 522(p)(1);[2] and, (2) whether Mr.

---

[1] See discussion infra Section II.B.1.
[2] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

**Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien** - 1

Cotton has been convicted of a felony as defined in 18 U.S.C. § 3156. Based on the pleadings in the record and the arguments of counsel, the order of the Court is as follows.

## I. BACKGROUND

The facts relied upon for the purpose of this order are undisputed. In 1997 and 1998, Debtor Robert Daniel Cotton ("Mr. Cotton") sexually abused Ms. Moore when she was ten and eleven years old. In 1999, Mr. Cotton was convicted of two counts of child molestation in the first degree under RCW 9A.44.083, a class A felony. In 2016, Debtors purchased the Real Property for $160,000 and have resided there at all times since its purchase.[3] On October 13, 2019, Ms. Moore commenced an action against Mr. Cotton in Pierce County Superior Court for damages caused by the sexual abuse. On October 12, 2020, Ms. Moore obtained a civil judgment against Mr. Cotton in the amount of $358,775 (the "Judgment"). Ms. Moore recorded the Judgment against Mr. Cotton's interest in the community property on November 19, 2020.

On May 12, 2021, amendments to the Homestead Act became effective, increasing the maximum allowed homestead exemption from $125,000 to "the greater of: (a) $125,000; [or] (b) The county median sale price of a single-family home in the preceding calendar year." RCW 6.13.030. On May 17, 2021, five days after the increased homestead exemption became effective, Debtors filed their Chapter 7 bankruptcy case.

Debtors' schedules reflect that the Real Property had a value of $400,614 as of the petition date. Schedule A, ECF No. 1. At the time of the petition, the Real Property was encumbered by a deed of trust in the amount of $145,831.40. Debtors claimed a homestead exemption in the Real Property in the amount of $254,782.60. Schedule C, ECF No. 1. On June 15, 2021, a meeting of the creditors was held under § 341. On June 30, 2021, Ms. Moore timely filed a proof of claim asserting that, as of the petition date, she was owed $389,442.89. At the time of filing the claim, Ms. Moore indicated that the claim was not secured by a lien on property. On

---

[3] The Real Property is community property.

**Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien** - 2

August 16, 2021, Debtors moved under § 522(f) to avoid Ms. Moore's judicial lien. On the same day, Ms. Moore amended her claim, increasing the total amount claimed to $395,104.65 and indicating that the claim is secured by a lien on the Real Property.

On October 6, 2021 Ms. Moore responded to Debtors' motion to avoid the judicial lien, arguing that § 522(q)(1)(A) does not permit Debtors to exempt an interest in the Real Property exceeding $170,350.[4] Ms. Moore did not concede that the Real Property has a fair market value of $400,614 but failed to provide any evidence contradicting Debtors' valuation. On October 12, 2021, the Court held a hearing and the parties presented arguments on the applicability of § 522(q)(1) to Debtors' claimed exemption.

## II. DISCUSSION

To avoid a lien under § 522(f), Debtors must prove the following: "(1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." *Culver, LLC v. Chiu (In re Chiu)*, 304 F.3d 905, 908 (9th Cir. 2002). Neither party disputes that the lien securing the Judgment was fixed on Debtors' property or that such lien is a judicial lien, therefore, these questions need not be addressed. Thus, to avoid Ms. Moore's judicial lien, Debtors must prove that it impairs their homestead exemption.

Judicial liens impair an exemption to the extent that the sum of all liens on the property, together with the value that the debtor could claim as exempt in the absence of the liens, exceed the value of the debtor's interest in the property if it were totally unencumbered. *See Owen v. Owen*, 500 U.S. 305 (1991).

In this case, the parties dispute the amount that the Debtors can claim as exempt. Both parties agree that RCW 6.13.030 allows Debtors to claim a maximum homestead exemption

---

[4] In her objection, Ms. Moore argued that the homestead exemption should be capped at $125,000 under § 522(q)(1)(A). However, the amount of the cap in § 522(q)(1) was adjusted under 11 U.S.C. § 104, effective April 1, 2019, to $170,350. Accordingly, the Court applies the current statutory cap amount to this order.

of $424,300.[5] Debtors argue that they may exempt their claimed equity of $254,782.60. Ms. Moore argues that Debtors' exemption must be capped at $170,350 under § 522(q)(1)(A). If Debtors are correct, Ms. Moore's judicial lien would impair their homestead exemption and therefore could be avoided. If Ms. Moore is correct, the lien may only be partially avoided to the extent that it impairs the applicable exemption.

## A. Procedure

As an initial matter, the Court addresses the procedural appropriateness of Ms. Moore's objection.

### 1. *Ms. Moore's objection is timely and proper under Rule 4003.*

Exemptions are governed by Rule 4003. This rule provides that "[a]n objection to a claim of exemption based on § 522(q) shall be filed before the closing of the case." Fed. R. Bankr. P. 4003(b)(3). Ms. Moore objected to Debtors' exemption under § 522(q)(1)(A) before the close of the case. Thus, her objection is timely.

Unlike some other bankruptcy rules, Rule 4003(b) prescribes no particular form for objections to exemption claims. However, the lack of entitlement to an exemption may be raised as a defense to a lien avoidance action, even if no timely objection was made. *See* Fed. R. Bankr. P. 4003(d); *Heintz v. Carey (In re Heintz)*, 198 B.R. 581 (9th Cir. BAP 1996). Although Ms. Moore did not raise an independent objection to Debtors' claim of exemption, she has raised her objection as a defense to Debtors' lien avoidance action. As such, Ms. Moore's objection is proper under Rule 4003(d).

### 2. *Ms. Moore has the burden of proof.*

Generally, a debtor's claimed exemption is presumptively valid, and the party objecting to a debtor's exemption has the burden of proving that the exemption is improper. *Carter v.*

---

[5] Ms. Moore does not contest that the median sale price of a single-family home in Pierce County in 2020 was $424,300.

*Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir.1999); Fed. R. Bankr. P. 4003(c). If the objecting party can produce evidence sufficient to rebut the presumption of validity, then the burden shifts to the debtor to provide unequivocal evidence to demonstrate that the exemption is proper. *Carter*, 182 F.3d at 1029 n.3. Accordingly, Ms. Moore has the burden of establishing by a preponderance of the evidence that Debtors' claimed exemption of $254,782.60 is improper.

**B. Arguments**

**1.** *Introduction and Background*

Ms. Moore challenges the validity of Debtors' claimed exemption under § 522(q)(1)(A) arguing that Debtors' exemption cannot exceed $170,350. In relevant part, § 522(q) provides:

> (q)(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $170,350 if—
>
> (A) the court determines, after notice and a hearing, that the debtor has been convicted of a felony (as defined in section 3156 of title 18), which under the circumstances, demonstrates that the filing of the case was an abuse of the provisions of this title[.] 11 U.S.C. § 522(q).

To meet her burden, Ms. Moore must establish by a preponderance of the evidence that:

> (1) The Real Property is the type of property described in subparagraph (A), (B), (C), or (D) of subsection (p)(1);
>
> (2) Mr. Cotton exempted an interest in the Real Property which exceeds in the aggregate $170,350;
>
> (3) Mr. Cotton has been convicted of a felony as defined in Section 3156 of Title 18; and,
>
> (4) The felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code.

At the November 4, 2021 status conference, the Court noted that: (1) the facts surrounding the first and third issues are undisputed, and the Court could decide these issues as a matter

**Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien** - 5

of law; and (2) the second[6] and fourth[7] issues require further factual development in the record for final resolution. At the status conference, the parties requested that the Court decide the two legal issues under partial summary judgment and leave the factual issues for future resolution following the December 2, 2021 continued status conference.

**2. *Legal Issues***

  a. *The Real Property is the type of property described in § 522(p)(1)(A) and (D).*

For the exemption cap imposed under § 522(q)(1)(A) to apply, Debtors must have exempted an interest in property described in subparagraphs (A), (B), (C), or (D) of subsection (p)(1). In relevant part, subsection (p)(1) provides:

> [A] debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $170,350 in value in--
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
>  . . . . [or]
>
> (D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

11 U.S.C. § 522(p)(1).

The parties do not dispute that Debtors acquired the Real Property more than 1215 days before filing their petition or that it is used as a residence and claimed as a homestead. The parties only dispute the extent that (q)(1) incorporates (p)(1). At the heart of this dispute is whether the phrase "property described in subparagraphs [(A) and (D)] of subsection (p)(1)" imports the 1215-day time limitation of (p)(1) into (q)(1), or whether the cross-reference to the

---

[6] Because the Judgment is only against Mr. Cotton's interest in the community property, the second issue can be further divided into the following two sub-issues: (1) Whether the parties dispute the value of the Real Property; and (2) What is Mr. Cotton's interest in the community property? On November 9,2021, Debtors filed a declaration stating that each Debtor owns a 50% interest in the community property. Currently, it is not clear if Ms. Moore plans to dispute Mr. Cotton's claimed interest in the community property.

[7] The issue of whether the felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code is a disputed factual issue that may require further hearing.

**Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien** - 6

subparagraphs of (p)(1) incorporates only the types of property described without importing the time limitation.[8]

Debtors argue that (p)(1) only applies to property acquired during the 1215-day period preceding the date the petition was filed, and therefore, subparagraphs (A) and (D), as incorporated in to § 522(q), also contain this 1215-day temporal requirement. Debtors argue that because they acquired the Real Property more than 1215 days before filing their petition, the Real Property is not the type of property described in the subparagraphs of (p)(1) and therefore, the exemption cap imposed by (q)(1) is inapplicable. Conversely, Ms. Moore argues that (q)(1) specifically references the subparagraphs of (p)(1)—not the entire subsection. Because the subparagraphs of (p)(1) list types of property, (q)(1)'s cross-reference is intended to incorporate these types of property without importing the 1215-day temporal requirement of the greater subsection.

In interpreting the meaning of a statute, a court must start "with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989). If the language is clear, the court's inquiry ends, and the court will enforce the statute according to its terms. *See Ron Pair*, 489 U.S. at 241. A statute is ambiguous if it "gives rise to more than one reasonable interpretation." *Woods v. Carey*, 722 F.3d 1177, 1181 (9th Cir. 2013) (internal quotations omitted). If the term is ambiguous, the court "may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Woods*, 722 F.3d at 1181 (internal quotations omitted). A fundamental principle of statutory construction is that "[i]nterpretive constructions [of statutes] which would render some words surplusage . . . are to be avoided." *In re Kun*, 868 F.2d 1069, 1071 (9th Cir. 1989).

---

[8] On November 15, 2021, Debtors filed a supplemental memorandum and provided the Court with excerpts of a secondary source and cases interpreting this issue for the purposes of § 522(q)(1)(B)(ii). The Court has taken these sources into consideration in deciding the issues addressed in this order.

**Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien** - 7

The language in dispute specifically states, "property described in *subparagraphs* (A) [through] (D) of subsection (p)(1)." 11 U.S.C. § 522(q) (emphasis added). This language is neither vague nor ambiguous and must be enforced according to its terms. This language refers only to the subparagraph and does not incorporate the 1215-day temporal requirement of the greater subsection. *See* Lawrence R Ahern, III, *Homestead and Other Exemptions Under the Bankruptcy Abuse Prevention and Consumer Protection Act: Observations on 'Asset Protection' After 2005*, 13 AM. BANKR. INST.L. REV. 585, 597 (2005) (explaining that section 522(q) applies "regardless of when the property was acquired").

However, even if the language were ambiguous, interpreting § 522(q) as incorporating the entirety of (p)(1) would run afoul of the fundamental principles of statutory construction and Congress's intent. Congress enacted § 522(p) and (q) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 522(p) attempts to close the "mansion loophole" by capping the amount of a homestead exemption. *See Greene v. Savage (In re Greene)*, 583 F.3d 614, 619 (9th Cir. 2009). "Section 522(q) *further limits* the exemption permitted by Section 522(p) for a debtor who is convicted of certain felonies or if the debtor has a debt arising from certain types of wrongful conduct*." In re Tarkanian*, 562 B.R. 424, 451 (Bankr. D. Nev. 2014) (emphasis added).

If Congress intended to incorporate the 1215-day time limitation of (p)(1) into (q)(1), it could have simply stated "property described in subsection 522(p)(1)." Instead, Congress chose to specifically reference only the subparagraphs of (p)(1). This indicates that Congress did not intend to incorporate the 1215-day period of the great (p)(1) subsection. *See* Leigh J. Francis, *Calling All Debtors, Want to Defraud Your Creditors? Here Is How: The Tenancy by the Entirety Loophole and the Nullification of Section 522(o), (p), and (q) of the 2005 Bankruptcy Amendments*, 18 U. MIAMI BUS. L. REV., Winter 2010, at 1, n.204. Additionally, interpreting § 522(q)'s cross-reference to the subparagraphs of (p)(1) as importing the entirety of (p)(1)

would render the language "subparagraphs (A), (B), (C), and (D)" superfluous. Under such an interpretation, (q)(1) effectively serves as a restatement of (p)(1), not as a further limitation on the permitted exemption. Conversely, interpretating the cross-reference as incorporating only the types of property listed in the subparagraphs, without importing the time limitation, would not create any redundancies. Such an interpretation is consistent with the view that § 522(q) is a further limitation on the permitted exemption. Therefore, the Court rejects Debtors' arguments. Because the Real Property is used as a residence and claimed as a homestead, the Court concludes that it is the type of property described in subparagraphs (A) and (D) of subsection (p)(1). Accordingly, this element of § 522(q)(1) is satisfied.

     b. *Mr. Cotton has been convicted of a felony as defined in Section 3156 of Title 18.*

For § 522(q)(1)(A) to apply, Ms. Moore must show that "the debtor has been convicted of a felony (*as defined in section 3156 of title 18*)[.]" 11 U.S.C. § 522(q)(1)(A) (emphasis added). The parties do not dispute that Mr. Cotton has been convicted of a felony under RCW 9A.44.083. The issue here is whether a felony under state law is a "felony" as defined in Section 3156 of Title 18, for the purposes of § 522(q)(1)(A). The parties have not provided, and the Court is not aware of, any caselaw addressing this issue.

Section 3156 provides:

> the term "felony" means an offense punishable by a maximum term of imprisonment of more than one year. 18 U.S.C. § 3156(a)(3).

Debtors argue that this definition of "felony" is limited to violations of federal law—not violations of state law. Debtors argue that the definition of "felony" in § 3156(a)(3) includes the word "offense," which is defined in § 3156(a)(2).

Section 3156 (a)(2) provides:

> the term "offense" means any criminal offense, other than [certain military offenses], which is in violation of an Act of Congress and is triable in any court established by an Act of Congress. 18 U.S.C. § 3156(a)(2).

Debtors argue that because "offense" is defined in subsection (a)(2), the subsequent use in subsection (a)(3) has the same meaning. In sum, Debtors argue that Mr. Cotton's state law conviction is not a violation of an "Act of Congress" and therefore, is not a "felony" as defined by 18 U.S.C. § 3156. Ms. Moore argues that "felony (as defined in section 3156 of title 18)" incorporates only the definition of "felony" provided in § 3156(a)(3). She argues that this definition of felony is not limited to violations of federal law and that the term "offense" in § 3156(a)(3) should be read according to its dictionary definition, not the limited definition provided in § 3156(a)(2). Thus, whether Mr. Cotton's felony conviction falls within the definition of the statute turns on whether the definition of felony in § 3156(a)(3) uses the dictionary definition of "offense" or uses "offense" as a term of art.

When considering a disputed term, the court should first consider it in the context of the statute, or identify any ambiguity or absurdity, before looking to secondary sources. Whether a statutory term is unambiguous does not turn solely on dictionary definitions. *Yates v. United States*, 135 S. Ct. 1074, 1081 (2015). "Rather, [t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" *Yates*, 135 S. Ct. at 1081–82 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). While a word's usage ordinarily accords with its dictionary definition, in law, "the same words, placed in different contexts, sometimes mean different things." *Yates*, 135 S. Ct. at 182.

First turning to the statute as a whole, the term "offense" is defined twice and is given separate definitions each time.[9] Further, both definitions of "offense" use the word "offense"

---

[9] Section 3156(a)(2) provides "the term 'offense' means any criminal offense, other than [certain military offenses], which is in violation of an Act of Congress and is triable in any court established by an Act of Congress." 11 U.S.C. § 3156(a)(2).
Section 3156(b)(2) provides "the term 'offense' means any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal). 11 U.S.C. § 3156(b)(2).

**Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien** - 10
Case 21-40847-MJH    Doc 35    Filed 11/16/21    Ent. 11/16/21 15:27:09    Pg. 10 of 12

within the definition. This indicates that the statute uses the word "offense" as its ordinary definition, as well as two separate terms of art. Nonetheless, this seeming ambiguity subsides when viewed in the specific context in which it is used.

When viewed in the specific context of § 3156(a)(3), only the ordinary definition of "offense" is consistent with the statute as a whole. Applying either of the term of art definitions to "offense", as used in § 3156(a)(3), would create internal inconsistencies. First, § 3156 specifically limits the definitions of subsection (a) to "sections 3141–3150 of this chapter" and the definitions of subsection (b) to "sections 3152–3155 of this chapter." Because the application of the term of art definitions is limited to §§ 3141–55, neither definition applies to the word "offense" within § 3156(a)(3). Second, even if the term of art definitions were applicable, both § 3156(a)(2) and (b)(2) use the ordinary definition of "offense" within their definitions. Therefore, the use of the ordinary definition of "offense" within the definition of § 3156(a)(3) would be internally consistent with how it is used within the definition of other defined terms in the statute. Conversely, applying a term of art definition only within the definition § 3156(a)(3) would be internally inconsistent with the rest of the statue. Thus, the context of § 3156 as a whole tugs strongly in favor of giving "offense" its dictionary definition. Accordingly, the Court concludes that the word "offense" within § 3156(a)(3) must be read in accord with its ordinary meaning. Black's Law Dictionary defines the term "offense" as "a violation of the law." *Black's Law Dictionary* 885 (9th ed.2009).

In defining "felony" for the purpose of § 522(q)(1)(A), the Court adopts the definition "a violation of the law punishable by a maximum term of imprisonment of more than one year." A conviction under RCW 9A.44.083 is a violation of the law punishable by a maximum term of imprisonment of more than one year. Accordingly, for the purpose of § 522(q)(1)(A), Mr. Cotton has been convicted of a felony as defined in Section 3156 of Title 18.

## III. CONCLUSION

Based on the foregoing, the Court concludes that Debtors' residence located at 4128 South J Street, Tacoma, Washington is property as described in § 522(p)(1)(A) and (D); and Mr. Cotton has been convicted of a felony as defined in 18 U.S.C. § 3156.

Until the facts on the record are further developed, the Court makes no determination on whether Mr. Cotton has exempted an interest in the Real Property that exceeds in the aggregate $170,350 or whether Mr. Cotton's felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code. These remaining issues will be continued to the status conference scheduled for December 2, 2021.

Accordingly, for the reasons stated herein, it is hereby

**ORDERED** that partial summary judgment on Debtors' Motion to avoid lien is granted.

/ / / End of Order / / /