**Below is a Memorandum Decision of the Court.**

*/s/ Mary Jo Heston*
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

___

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 21-40847-MJH |
| ROBERT DANIEL COTTON, JR., and | **MEMORANDUM DECISION ON DEBTORS' MOTION FOR SUMMARY JUDGMENT** |
| TINA MARIE COTTON, | |
| Debtors. | |

This matter came before the Court on January 6, 2022, on Robert Daniel Cotton and Tina Marie Cotton's (collectively "Debtors") motion for summary judgment ("SJ Motion") to avoid the judicial lien held by Suzanne Moore against Debtors' residence located at 4128 South J Street, Tacoma, Washington ("Real Property"). The Court having considered the arguments of counsel and pleadings in the record[1] hereby makes the following conclusions of law.

## I. BACKGROUND AND FACTS

The background and undisputed facts regarding the above-captioned case are set forth in detail in the Court's Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien ("Partial Summary Judgment Decision") at ECF No. 35, which the Court hereby

---

[1] On January 13, 2022, Debtors filed a letter responding to cases cited at the January 6, 2022 hearing. The Court has taken this letter into consideration in rendering this decision.

MEMORANDUM DECISION ON DEBTORS' MOTION FOR SUMMARY JUDGMENT – 1

incorporates by reference. In addition to the facts incorporated by reference, the following material facts are undisputed, and they are stated generally in chronological order.[2]

**September 2008:** Robert Daniel Cotton ("Mr. Cotton") and Tina Marie Cotton ("Mrs. Cotton") married.

**April 2014:** The Real Property was purchased.[3]

**April 8, 2014:** Mrs. Cotton executed a quitclaim deed in favor of Mr. Cotton, in which she conveyed her current interest in the Real Property and "all after acquired title" to the Real Property "for and in consideration of To Establish Separate Property." ECF No. 39.

**April 9, 2014:** Fannie Mae A/K/A Federal National Mortgage Association executed a special warranty deed conveying the Real Property to "Robert D Cotton Jr., A Married Man as his separate estate." ECF No. 39.

**October 12, 2020:** Ms. Moore obtained a civil judgment against Mr. Cotton in the amount of $358,775. The judgment became a lien against Mr. Cotton's interest in the Real Property pursuant to RCW 4.56.190 and RCW 4.56.200.

**November 19, 2020:** Ms. Moore recorded the judgment against Mr. Cotton's interest in the Real Property.

## II. BURDENS OF PROOF

### A. Overview

Debtors moved to avoid Ms. Moore's lien under § 522(f)[4] ("Motion to Avoid"). To avoid a lien under § 522(f), Debtors must establish the following: "(1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." *Culver, LLC v. Chiu (In re Chiu)*, 304

---

[2] To the extent that the dates of the facts set forth herein conflict with the dates incorporated by reference, the dates set forth in this decision control.

[3] After the Partial Summary Judgment Decision, Debtors filed a declaration stating that they mistakenly listed the purchase year as 2016 on Schedule A. ECF No. 39.

[4] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

F.3d 905, 908 (9th Cir. 2002). Neither party disputes that Ms. Moore's lien was fixed on Debtors' property or that such lien is a judicial lien. Thus, to avoid Ms. Moore's lien, Debtors bear the burden of establishing that it impairs Debtors' homestead exemption.

Generally, a debtor's claimed exemption is presumptively valid, and the party objecting to a debtor's exemption has the burden of proving that the exemption is improper. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir.1999); Rule 4003(c). If the objecting party can produce evidence sufficient to rebut the presumption of validity, then the burden shifts to the debtor to provide unequivocal evidence to demonstrate that the exemption is proper. *Carter*, 182 F.3d at 1029 n.3.

As currently claimed, Ms. Moore's lien impairs Debtors' homestead exemption. Accordingly, Ms. Moore has the burden of establishing by a preponderance of the evidence that Debtors' claimed exemption is improper. Ms. Moore has objected to Debtors' exemption, arguing that it must be capped at $170,350 under § 522(q)(1)(A) ("Objection"). To meet her burden under § 522(q)(1)(A), Ms. Moore must establish the following four elements:

1. The Real Property is the type of property described in subparagraph (A), (B), (C), or (D) of § 522(p)(1);
2. Mr. Cotton has exempted an interest in the Real Property exceeding $170,350;
3. Mr. Cotton has been convicted of a felony as defined in 18 U.S.C. § 3156; and,
4. Mr. Cotton's felony conviction demonstrates that the filing of this case was an abuse of the Bankruptcy Code.

The Court ruled in Ms. Moore's favor on the first and third elements in the Partial Summary Judgment Decision. At this stage, only the second and fourth elements of Ms. Moore's Objection remain to be determined. Ms. Moore has the burden to establish both the second and fourth elements. If Ms. Moore is unable to establish either of the two remaining elements, her Objection fails as a matter of law. Debtors' Motion seeks a determination that Ms. Moore cannot establish the second element and therefore the Objection should be overruled and the Motion to Avoid should be granted as a matter of law.

## B. Burden on Summary Judgment

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986). All inferences drawn from the evidence presented must be drawn in favor of the party opposing summary judgment, and all evidence must be viewed in the light most favorable to that party. Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). The responding party may not rest upon mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 256.

The Debtors, as the moving party, bear the burden of establishing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

## III. DISCUSSION

Debtors contend that the Real Property is community property and therefore Mr. Cotton has only exempted his one-half interest. Debtors argue that because they claimed an exemption of $254,782.60, Mr. Cotton has only exempted his interest of $127,391.15. Debtors also argue that § 522(m) as applied to § 522(q), doubles the exemption cap of § 522(q) by applying it separately to each Debtor. In sum, Debtors argue that they are entitled to judgment in their favor because neither Debtor has an ownership interest that exceeds $170,350 and therefore Ms. Moore cannot establish the second element of her Objection.

Ms. Moore argues that the Real Property is Mr. Cotton's separate property; therefore, Mr. Cotton has exempted an interest in the Real Property exceeding $170,350, and the Court should deny Debtors' SJ Motion.

The initial question for the Court to resolve is whether the Real Property is community property or Mr. Cotton's separate property.

## A. Characterization of the Real Property

Washington community property law places great importance on presumptions in determining the character of property as either separate or community property. "The presumptions are *true* presumptions, and in the absence of evidence sufficient to rebut an applicable presumption, the court must determine the character of property according to the weight of the presumption." *In re Estate of Borghi*, 167 Wn.2d 480, 484 (2009) (emphasis in original). The character of property as separate or community property is determined at the date of acquisition. *Id.* Under the "inception of title" theory, property acquired subject to a mortgage is acquired when the obligation is undertaken. *Id.* (citing Harry M. Cross, *The Community Property Law,* 61 Wash. L. Rev. 13, 39 (1986)); *see also*, *In re Estate of Binge,* 5 Wn.2d 446, 454 (1940); *Beam v. Beam,* 18 Wn. App. 444, 453 (1977). Once property is established as either separate or community property, it is presumed that it maintains that character absent clear and convincing evidence to the contrary. *Guye v. Guye,* 63 Wash. 340, 352 (1911).

In Washington, property acquired during marriage is presumed to be community property, regardless of how title is held. *Dean v. Lehman*, 143 Wn.2d 12, 19 (2001). "The burden of rebutting this presumption is on the party challenging the asset's community property status, and 'can be overcome only by clear and convincing proof that the transaction falls within the scope of a separate property exception.'" *Id.* at 19–20 (internal citations omitted) (quoting *Estate of Madsen v. Comm'r of Internal Revenue*, 97 Wn.2d 792, 796 (1982), *overruled in part on other grounds* by *Aetna Life Ins. v. Wadsworth*, 102 Wn.2d 652, 659–60 (1984)).

RCW 26.16.050 sets forth a separate property exception for conveyances between spouses. In relevant part, RCW 26.16.050 provides:

> A spouse . . . may give, grant, sell or convey directly to the other spouse . . . his or her community right, title, interest or estate in all or any portion of their community real property: And every deed made from one spouse to the other . . . shall operate to divest the real estate therein recited from any or every claim or demand as community property and shall vest the same in the grantee as separate property. The grantor in all such deeds, or

> the party releasing such community interest or estate shall sign, seal, execute and acknowledge the deed as a single person without the joinder therein of the married party . . . named as grantee . . . .

RCW 26.16.050.

Under this statute, one spouse may divest herself of an interest in community real property by conveying that interest to the other spouse, and the conveyed interest will vest in the grantee as separate property. These conveyances have long been held to be clear and convincing evidence of the creation of separate property.[5]

Here, the undisputed evidence is that Mrs. Cotton executed a quitclaim deed on April 8, 2014. In executing the quitclaim deed, Mrs. Cotton expressed a clear intent to convey her interest in the Real Property to Mr. Cotton. Thus, as of April 8, 2014, any interest Mrs. Cotton had in the Real Property vested in Mr. Cotton as his separate property. The quitclaim deed also contained a clear expression of intention to convey all after acquired title in the Real Property. Thus, any interest created in the Real Property after April 8, 2014, became Mr. Cotton's separate property. *See* RCW 64.04.050. Accordingly, absent clear and convincing evidence to the contrary, the Real Property is presumed to maintain its character as Mr. Cotton's separate property.

### *1. Intent of the Parties*

Debtors first argue that quitclaim deeds are often used to qualify for purchase and for better terms on loans and therefore are not a true transfer of property. Debtors further argue that Mrs. Cotton executed the quitclaim deed to qualify for better financing terms and did not intend to transfer her interest to her husband as separate property.

The long-established rule in Washington is that when one spouse quitclaims land to another, the land becomes the separate property of the grantee and is not liable for community

---

[5] *See, e.g., Bryant v. Stablein* 28 Wn.2d 739, 747 (1947) (execution of quitclaim deed, from husband to wife, of property purchased after marriage, had effect of divesting husband of all right, title and interest in property); *Findley v. Findley*, 193 Wash. 41, 47 (1937) (execution of deed from husband to his wife "thereby divested [him] of any right, title, or interest he had in the real property and it became and remained the separate property of [his wife]"); *Shorett v. Signor*, 58 Wash. 89, 96 (1910) (the legal effect of a deed from one member of a community to the other is to convey the community property and title to the grantee, so that it becomes the grantee's separate property in which the community ceases to have any further title or interest).

debts regardless of the intent of the grantor. *See Goodfellow v. Le May*, 15 Wash. 684, 685 (1896). This long-established rule has been followed in subsequent cases for over a hundred years.[6]

Courts also have held that the subjective intent of a grantor does not control when a recorded instrument is unambiguous. *See Johnson v. Wheeler*, 41 Wn.2d 246, 249 (1952). In *Johnson* a husband recorded a deed conveying his interest in community property to his wife and later argued that the deed was not intended to take effect until after his death. The court held that the husband's intention could not contradict an unambiguous deed, reasoning that "secret intentions cannot contradict an unambiguous recorded instrument, and evidence to that effect is not admissible." *Johnson*, 41 Wn.2d at 249 (1952) (citing *Parke v. Case*, 113 Wash. 263 (1920)).

Here, Debtors seems to argue that the quitclaim deed was effectually a sham document without legal consequence. Debtors offer no legal authority for the Court to disregard both the express language set forth in RCW 26.16.050 and well over a century of Washington caselaw. Further, holding that the quitclaim deed was without legal effect would be problematic as presumably the mortgage lender understood that the quitclaim deed would extinguish Mrs. Cotton's rights in the Real Property and was likely a factor in the calculation of the terms of the mortgage. Accordingly, the Court rejects Debtors' argument that the quitclaim deed was not a true transfer of property.

Next, Debtors contend that they did not intend to create separate property and that their intent controls, not the deeds. Citing *Borghi*, Debtors argue that the names on the special

---

[6] *See, e.g., Sponogle v. Sponogle* 86 Wash. 649, 651 (1915) ("It is plain, that conveyance of community property by a husband to his wife makes it thereafter her separate property under our laws.") (cleaned up); *Chaudoin v. Claypool*, 174 Wash. 608, 611 (1933) (wife's quitclaim deed to her husband expressed her intent for title to vest title in him as separate property and was "the effect the law gave to the deed."); *Bryant*, 28 Wn.2d at 747 (in executing quitclaim deed, husband "divested himself of all right, title, and interest in the property, and it thereby became the separate property of the wife"); *Sec. Sav. & Loan Ass'n v. Busch*, 84 Wn.2d 52, 56, (1974) ("A quitclaim deed is deemed a good and sufficient conveyance of all then existing legal and equitable rights of the grantor in the described premises," and extinguishes grantor's homestead right); *Snohomish Cty. v. Hawkins*, 121 Wn. App. 505, 512 (2004) (same).

warranty deed and quitclaim deed do not determine the character of the property and therefore, the Court must look to the intent of the parties. Debtors further argue that they treated the Real Property as community property and their use of community funds demonstrates their intent to retain the Real Property as community property. In sum, Debtors argue that under *Borghi*, the Court must disregard the deeds and look only to Debtors' intent. For the reasons explained below, Debtors read *Borghi* too broadly.

In *Borghi*, the woman later known as Jeanette Borghi entered into a real estate purchasing contract before marriage. *Borghi*, 167 Wn.2d at 482. Three months after she married, the contract seller issued a fulfillment deed in the names of the husband and wife. *Id.* Ms. Borghi later died intestate and her son from a prior marriage sought rights to that property. *Id.* at 482–83. The court held that the joint titling on the fulfillment deed alone was insufficient to overcome the presumption that the property was Ms. Borghi's separate property. The court reasoned that the names on the title alone does not sufficiently evidence an intent to change the characteristic of property. *Id.* at 488–89.

Here, Debtors' contention is true in that the names on the title do not control the characterization of property. The fact that Mrs. Cotton's name is not listed on the special warranty deed is not dispositive. However, the *Borghi* court did not hold that a quitclaim deed from one spouse to the other is insufficient evidence of intent to transfer property. The *Borghi* Court noted that married individuals are free to dispose of their interests in community or separate property, including changing the characteristics of the property. *See Id.* at 488–89. The court went on to explain that "[w]ith respect to real property, a spouse may execute a quitclaim deed transferring the property to the community [or to the other spouse as separate property],[7] join in a valid community property agreement, or otherwise in writing evidence his or her intent." *Id.* The quitclaim deed acknowledged by Mrs. Cotton is a writing that evidences

---

[7] The Court noted that there is no reason to differentiate between the evidence needed to overcome the presumption in favor of either community or separate property "given our recognition that the right of a party in her separate property is 'as sacred' as the right of spouses in their community property." *Borghi*, 167 Wn.2d at 490 n.4 (citing *Guye,* 63 Wash. at 352).

her intent to transfer her interest in the Real Property to Mr. Cotton and create separate property. Accordingly, the Court rejects Debtors' argument.

### *2. Transmutation*

Debtors argue that even if the Real Property was acquired as Mr. Cotton's separate property, it has since been transmuted to community property. Debtors assert that all mortgage payments were made with community funds and "where separate funds have been so commingled with community funds that it is no longer possible to distinguish or apportion them, all of the commingled fund, or the property acquired thereby, is community property." *In re Dougherty's Estate*, 27 Wn.2d 11, 24 (1947). Therefore, Debtors argue that the Real Property was community property on the date of filing their petition.

Under Washington law, it is well established that the mere joinder in a mortgage on separate property or the use of community funds to pay off a mortgage on separate property does not change the property's status, but at most entitles the community to an equitable lien against the property. *See Merkel v. Merkel*, 39 Wn.2d 102, 114–15 (1951); *In re Marriage of Harshman*, 18 Wn. App. 116, 123, (1977); *Seaton v. Smith*, 186 Wash. 447, 452 (1936); *Guye*, 63 Wash. at 352–53; *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 428 (1911). As the Washington Supreme Court explained in *Borghi:*

> Later community property contributions to the payment of obligations, improvements upon the property, or any subsequent mortgage of the property may in some instances give rise to a community right of reimbursement protected by an equitable lien, but such later actions do not result in a transmutation of the property from separate to community property.

*Borghi*, 167 Wn.2d at 490 n.7.

In this case, Mrs. Cotton executed a quitclaim deed and divested herself of any interest in the Real Property at the time of its acquisition. Therefore, at the time of its acquisition, the Real Property was Mr. Cotton's separate property. Once property is established to be of a separate character, it will be presumed to maintain that character until clear and convincing evidence to the contrary shows otherwise. *Guye,* 63 Wash. 340 at 352. Debtors' use of community funds

for mortgage payments may give Mrs. Cotton a community right of reimbursement protected by an equitable lien, however, it does not transmute the Real Property from Mr. Cotton's separate property to the community property of both spouses.

### B. Mrs. Cotton's Separate Exemption

Debtors argue that Mrs. Cotton can claim Mr. Cotton's interest in the Real Property as her homestead under RCW 6.13.010 as her dependent spouse.[8] RCW 6.13.010 states in relevant part, "The homestead consists of real or personal property that the owner or a dependent of the owner uses as a residence." RCW 6.12.020 states that the homestead may consist of the community property of the spouses or the separate property of either spouse. Debtors argue that Mr. Cotton is Mrs. Cotton's dependent spouse and that she may claim his separate property, here the Real Property, as her homestead.

A dependent may only assert exemption claims that are available to the debtor. *See* 4 *Collier on Bankruptcy* para. 522.04 (16th ed. 2021). In a joint case, debtors are limited to a single homestead exemption under Washington law. *See* RCW 6.12.020. In this case, if § 522(q) is applicable, Mr. Cotton's homestead exemption would be capped at $170,350 and Mrs. Cotton could only claim up to that amount as a dependent spouse. On the other hand, if § 522(q) is inapplicable, Mr. Cotton could claim the full homestead exemption in his separate property without Mrs. Cotton claiming it as the property of her dependent. Allowing Mrs. Cotton to claim Mr. Cotton's full interest in the Real Property regardless of the applicability of § 522(q) would have the effect of Mr. Cotton claiming the full exemption, which would serve only to defeat Mrs. Moore's objection by form over substance. The Court rejects Debtors' argument.

## IV. CONCLUSION

The Court concludes that the Real Property is Mr. Cotton's separate property, and he has exempted an interest in the Real Property exceeding $170,350. Accordingly, Debtors have failed to establish that Ms. Moore is unable to meet her burden of proof, and their motion for

---

[8] Under § 522(a)(1), a "dependent" includes a spouse, whether or not actually dependent.

summary judgment is denied. Based on the Court's conclusion herein, the Court hereby grants partial summary judgment to Ms. Moore on the issue of whether Mr. Cotton has claimed an exemption in the Real Property exceeding $170,350.[9] The remaining issue of whether Mr. Cotton's felony conviction demonstrates that the filing of this case was an abuse of the Bankruptcy Code, raises questions of material fact that must be decided before the Court makes a final ruling on Debtors' Motion to Avoid. The heavy burden of establishing this final element remains with Ms. Moore.

The parties should appear at the status conference scheduled for 2:00 PM on February 3, 2022, to discuss how to best proceed in this case in light of the Court's Memorandum Decision.

/ / / End of Memorandum Decision / / /

---

[9] When one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case the court may sua sponte grant summary judgment to the non-moving party. *See* Fed. R. Civ. P. 56(f). In this case, by submitting the ultimate legal issue herein involved to the Court for resolution, Debtors assumed or conceded that as to the resolution of the issue, there were no material facts in dispute. Debtors have addressed the issue of whether there are any genuine issues of material fact for trial in their briefs filed in this Court, and they have had the opportunity to convince the Court of their position at oral argument.