**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*
**Mary Jo Heston**
**U.S. Bankruptcy Judge**

(Dated as of Entered on Docket date above)

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

ROBERT DANIEL COTTON, JR., and

TINA MARIE COTTON,

Debtors.

Case No. 21-40847-MJH

**MEMORANDUM DECISION ON DEBTORS' MOTION TO AVOID LIEN**

This matter came before the Court on March 10, 2022, on Robert Daniel Cotton and Tina Marie Cotton's (individually "Mr. Cotton" and "Mrs. Cotton" respectively) (collectively "Debtors") motion to avoid the judicial lien held by Suzanne Moore ("Ms. Moore") against Debtors' residence located at 4128 South J Street, Tacoma, Washington ("Real Property"). The Court having considered the arguments of counsel and pleadings in the record hereby makes the following findings of fact and conclusions of law.

## I. PROCEDURAL BACKGROUND[1]

On August 16, 2021, Debtors moved under § 522(f)[2] to avoid Ms. Moore's judicial lien. On the same day, Ms. Moore amended her claim, increasing the total amount claimed to

---

[1] The background and undisputed facts regarding the above-captioned case are set forth in detail in the Court's Order Granting Partial Summary Judgment on Debtors' Motion to Avoid Lien at ECF No. 35, and in the Court's Memorandum Decision on Debtors' Motion for Summary Judgment at ECF No. 45, which the Court hereby incorporates by reference.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

$395,104.65 and indicating that the claim is secured by a lien on the Real Property.[3] On August 18, 2021, Debtors received a discharge for community liabilities in the amount of $64,924. On October 6, 2021, Ms. Moore responded to Debtors' motion to avoid the judicial lien, arguing that § 522(q)(1)(A) limits the amount of Debtors' homestead exemption to $170,350. The Court procedurally treated Ms. Moore's objection as an objection to the homestead exemption.

On November 4, 2021, the Court held a status conference, at which time the Court identified for the parties four discrete issues raised by Ms. Moore's objection.[4] At this status conference, both parties requested that the Court bifurcate and rule initially only on the first and third issues. The Court ruled in Ms. Moore's favor on these two issues in the Order Granting Partial Summary Judgment. *See* ECF No. 35 ("Initial SJ Order").

On December 3, 2021, Debtors filed a motion for summary judgment to resolve the remaining two issues under § 522(q). On January 21, 2022, the Court entered an order on the summary judgment motion: 1) holding in favor of Ms. Moore as a matter of law on the second issue (i.e. that Mr. Cotton's claimed exemption in separate property exceeded the applicable § 522(q) exemption cap);[5] and 2) denying Debtors' motion for summary judgment on the remaining fourth issue because of the existence of material issues of fact. *See* ECF Nos. 45 and 46 ("Second SJ Order").

On February 3, 2022, the Court held a status conference to determine whether the parties wished to hold an evidentiary hearing on the remaining issues under § 522(q). Both parties requested the opportunity to submit additional briefing and new declarations to address the final and fourth issue under § 522(q)(1) (i.e., whether, under the circumstances, the felony

---

[3] The parties do not contest that Ms. Moore's claim is non-dischargeable. *See* Debtors' Resp. 15:18–19, ECF No. 49 ("here the underlying separate debt is not dischargeable").

[4] The four discrete issues raised by the objection are: (1) whether the Real Property is the type of property described in subparagraph (A), (B), (C), or (D) of § 522(p)(1); (2) whether Mr. Cotton exempted an interest in the Real Property which exceeds in the aggregate $170,350; (3) whether Mr. Cotton has been convicted of a felony as defined in 18 U.S.C. § 3156; and, (4) whether the felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code.

[5] In a memorandum decision the Court held that the Real Property was Mr. Cotton's separate property. (ECF No. 45),

conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code). The parties also requested the opportunity to present oral arguments and agreed to waive their right to an evidentiary hearing. The parties further asked the Court to defer ruling on the § 522(q)(2) issue (i.e., that the cap shall not apply to the extent that amount of an interest is reasonably necessary for the support of the debtor or the debtor's dependents) until after it ruled on the § 522(q)(1) issue. The Court held a hearing on March 10, 2022, to resolve the issue of whether under the circumstances, including Mr. Cotton's felony conviction, the filing of the chapter 7 case constitutes an abuse of Title 11. Based on the record, including the pleadings filed in this contested matter to date, the Court's findings and conclusions in both the Initial and Second SJ Orders, and the arguments of counsel at the March 10 hearing, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT, DISCUSSION, AND CONCLUSIONS OF LAW

### A. Findings of Fact.

The following facts are undisputed. In 1997 and 1998, Mr. Cotton sexually abused Ms. Moore when she was ten and eleven years old. In 1999, Mr. Cotton was convicted of two counts of child molestation in the first degree under RCW 9A.44.083, a class A felony. In April 2014, Debtors purchased the Real Property for $160,000. On April 8, 2014, in anticipation of the purchase, Mrs. Cotton executed a quitclaim deed in favor of Mr. Cotton, in which she conveyed all her current and after acquired interest in the Real Property to Mr. Cotton. On April 9, 2014, the sale of the Real Property closed, and Mr. Cotton acquired title as his separate property. On October 13, 2019, Ms. Moore commenced an action against Mr. Cotton in Pierce County Superior Court seeking damages for her injuries caused by the sexual abuse. On October 12, 2020, Ms. Moore obtained a civil judgment against Mr. Cotton in the amount of $358,775 ("Judgment"). On November 19, 2020, Ms. Moore recorded the Judgment against the Real Property.

On May 12, 2021, amendments to the Homestead Act became effective, increasing the maximum allowed homestead exemption from $125,000 to "the greater of: (a) $125,000; [or]

(b) The county median sale price of a single-family home in the preceding calendar year." RCW 6.13.030. On May 17, 2021, five days after the increased homestead exemption became effective, Debtors filed their chapter 7 bankruptcy case.

Debtors' schedules reflect that the Real Property had a value of $400,614 as of the petition date. Schedule A, ECF No. 1. At the time of the petition, the Real Property was encumbered by a deed of trust in the amount of $145,831.40. Debtors claimed a homestead exemption in the Real Property in the amount of $254,782.60. Schedule C, ECF No. 1. On June 15, 2021, a meeting of the creditors was held under § 341. On June 30, 2021, Ms. Moore timely filed a proof of claim asserting that, as of the petition date, she was owed $389,442.89.

**B. Discussion and Conclusions of Law.**

In relevant part, § 522(q)(1) provides:

> (1) . . . a debtor may not exempt any amount of an interest in [certain property, including real or personal property that the debtor or a dependent of the debtor uses as a residence] which exceeds in the aggregate $170,350 if—
>
> (A) the court determines, after notice and a hearing, that the debtor has been convicted of a felony (as defined in section 3156 of title 18), which under the circumstances, demonstrates that the filing of the case was an abuse of the provisions of this title.

The current issue before the Court in this matter is whether, under the facts and circumstances of this case, Mr. Cotton's prior felony conviction demonstrates that the filing of the Debtors' chapter 7 case was an abuse of the Bankruptcy Code.

***1. Burdens of proof.***

Debtors' claimed exemption is presumptively valid, and the objecting party[6] has the burden of proving that the exemption is improper. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir.1999); Fed. R. Bankr. P. 4003(c). If the objecting party can produce evidence sufficient to rebut the presumption of validity, then the burden shifts to the debtor to provide

---

[6] As noted in the Initial SJ Order, the Court treated Ms. Moore's § 522(q) objection to the Debtors' motion to avoid her judgment lien under § 522(f) as an objection to the validity of Debtors' claimed exemption. *See* Initial SJ Order, pp. 3–5. ECF No. 35.

unequivocal evidence to demonstrate that the exemption is proper. *Carter*, 182 F.3d at 1029 n.3.

Here, Ms. Moore has the burden of establishing by a preponderance of the evidence that the prior felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code. If Ms. Moore carries her burden, thereby establishing § 522(q)(1)(A) and rebutting the presumption of validity, then the burden shifts to the Debtors to establish that they are entitled to more than the capped amount pursuant to the § 522(q)(2) savings clause, which will be dealt with in a subsequent hearing.[7]

### 2. The definition of "abuse" under § 522(q)(1)(A)—in general.

The Bankruptcy Code does not define "abuse" for the purpose of § 522(q)(1)(A). The legislative history of § 522(q) also fails to provide any insight into the standards for determining abuse. *See* H.R. REP. No. 109-31, pt.1, at 16 (2005) (Stating only that the intent of § 522(q) is to prevent "[debtors] who have engaged in criminal conduct from shielding their homestead assets from those whom they have defrauded or injured.").

The Ninth Circuit has no controlling caselaw on this issue. In fact, the Court is aware of only one case in which the § 522(q)(1)(A) exemption cap was referenced. *See*, *In re Prince*, No. 09-43627, 2011 Bankr. LEXIS 5511 (Bankr. E.D. Tex. July 25, 2011). However, because *Prince* involved post-filing bankruptcy crimes including the debtor's knowing and fraudulent concealment of assets and the making of false oaths in the bankruptcy schedules, the bankruptcy court does not discuss the definition of or standards for determining abuse under § 522(q)(1)(A).

Here, Debtors argue that *Prince* supports their position that "abuse" can only be proven under § 522(q)(1)(A) where the felony conviction at issue is for a financial or bankruptcy crime. The Court rejects this argument as there is no limitation of the type of felony referenced under

---

[7] § 522(q)(2) provides that: Paragraph (1) shall not apply to the extent the amount of an interest in [the property described in paragraph (1)] is reasonably necessary for the support of the debtor and any dependent of the debtor.

§ 522(q)(1)(A).[8] In sum, *Prince* provides no insight into the definition of abuse. For this same reason, the Court also rejects Debtors' argument that abuse under § 522(q)(1)(A) only applies in circumstances where the filing of the bankruptcy case constitutes a "malicious abuse of legal process . . . for some unlawful object." (Debtors' Resp. 2:20–3:6, ECF No. 49). The statute makes no reference to maliciousness. Instead, the statute merely requires that under the circumstances the felony conviction demonstrates that the filing of the case was an abuse of the provisions of this title. *Cf. In re Price*, 353 F.3d 1135, 1139–40 (9th Cir. 2004) (holding that under the pre-BAPCPA definition of substantial abuse for dismissal of a chapter 7 case, a finding of maliciousness or unlawful aims is not required).

While § 522(q)(1)(A) does not provide any guidance on what constitutes an abuse, its use of the language "under the circumstances" clearly directs the court to make a fact specific inquiry. The statute's use of the phrase "demonstrates that the filing of the case was an abuse" as a modifier of the required felony conviction suggests that there must, at a minimum, be some connection between the conviction and the filing of the case for the court to find that such filing constitutes an abuse.

If the court finds that the filing of the case constitutes an abuse under this provision, the resulting consequence is to limit the debtor's available exemption to $170,350. However, even if the court finds an abuse, the statute provides the debtor with an additional protection under § 522(q)(2). When viewed together, the resulting consequence and the additional protection suggest, at a minimum, that the standard for what constitutes an abuse under § 522(q)(1)(A) should be lower than the standard for a finding of abuse under other substantial abuse tests where the consequences are either the denial of all bankruptcy relief or a limitation of the type of relief available. *See* §§ 707(b), 1307(c).

With these general principals in mind, we must determine whether under the facts of this case, Mr. Cotton's felony conviction for sexually abusing Ms. Moore when she was a child

---

[8] As illustrated in § 522(q)(1)(B), Congress clearly knows how to limit types of felonies where it intends to limit the scope of the statute.

demonstrates that the filing of his chapter 7 bankruptcy case is an abuse such that his homestead exemption should be limited to $170,350 under § 522(q)(1)(A).

### 3. The required nexus exists between Mr. Cotton's felony conviction and his filing of the chapter 7 bankruptcy case.

The mere existence of a felony conviction, as defined in § 522(q)(1)(A), will not by itself trigger the § 522(q)(1)(A) exemption cap. Instead, as a threshold matter, for a felony conviction to demonstrate that the filing of the case is an abuse, there must be some nexus between the felonious conduct and the bankruptcy case. *See* COLLIER ON BANKRUPTCY ¶ 522.13 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Although the statutory language is less than clear, the objecting party will need to establish some connection between the felony conviction and the bankruptcy proceeding such that the bankruptcy filing would be deemed an abuse.").

Debtors argue that there is no nexus between Mr. Cotton's felony conviction and the bankruptcy case. Citing *Prince*, Debtors contend that § 522(q) only applies when a debtor has been convicted of a felony arising out of his or her conduct during a bankruptcy proceeding. (Debtors' Resp. at 9:1–11:2.) Debtors argue that because Mr. Cotton was convicted of felony child molestation and not a felony stemming from conduct in the bankruptcy case, no nexus exists between his conviction for sexually abusing Ms. Moore and the filing of this bankruptcy case twenty-two years later. Debtors' reliance on *Prince* is misguided.

*Prince* makes clear that felony convictions for crimes such as bank fraud, engaging in transactions of property derived from unlawful activity, and making false declarations under oath in a bankruptcy proceeding will trigger the § 522(q)(1)(A) cap. *See*, *In re Prince*, 2011 Bankr. LEXIS 5511 at *9. However, *Prince* does not stand for the proposition that only felonies arising from bankruptcy or financial crimes will trigger § 522(q)(1)(A). Neither the clear statutory language of § 522(q) nor any judicial decision interpreting it suggest that the cap only applies when the debtor has been convicted of a felony arising out of a bankruptcy proceeding or for financial crimes or fraud. Although a felony conviction arising out of the bankruptcy proceeding is one way to demonstrate the required nexus, it is not the only way. Another way

that an objecting party might demonstrate this nexus is by showing that the debtor is "attempting to discharge civil liability owing to victims of the crime, or that the bankruptcy filing may in some manner impede the debtor's obligation to pay restitution related to the felony conviction." COLLIER ON BANKRUPTCY ¶ 522.13 (Richard Levin & Henry J. Sommer eds., 16th ed.).

In this case, Mr. Cotton's felony conviction arises from sexually abusing Ms. Moore when she was ten and eleven years old. Ms. Moore—the party objecting to Mr. Cotton's homestead exemption—is the victim of the exact conduct that gave rise to the felony conviction. The Judgment entitles Ms. Moore to damages for the injuries she received as a direct result of the sexual abuse that led to Mr. Cotton's conviction. But for this exact conduct, neither Ms. Moore's Judgment nor her lien against the Real Property would exist. Thus, Debtors are attempting to use this bankruptcy case to avoid a lien that exists as a direct result of the sexual abuse that led to the felony conviction and is held by the victim of that exact abuse. In sum, the Court holds that the required nexus exists between Mr. Cotton's felony conviction and this bankruptcy case. Having found that this minimum threshold has been met for application of § 522(q)(1), the Court turns to the additional facts that exist in this case to determine whether to apply the exemption cap under this section.

### 4. Additional facts considered also support the application of § 522(q)(1).

Ms. Moore argues that under the totality of the circumstances, Mr. Cotton's felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code for the following four reasons: (1) the severity of the crime; (2) the Judgment arose out of the exact criminal acts for which Mr. Cotton was convicted; (3) the Judgment is by far the largest claim against the estate; and (4) avoiding Ms. Moore's lien would effectively allow Mr. Cotton to escape civil liability for the injuries he caused to the victim of his sexual abuse.

Debtors argue that the Court should not consider the severity of the crime nor whether the creditor at issue is the victim of the conduct that led to the conviction because these factors should only be considered in a determination of non-dischargeability. Debtors further contend

that the Court should not place weight on the percentage of the total debt attributable to Ms. Moore's Judgment. Debtors' argument is not persuasive.

The Court holds that in viewing the totality of the circumstances, it is important to consider all facts that exist and that are relevant to the analysis, including those suggested by Ms. Moore, as well as other nonexclusive factors such as Debtors' overall financial situation, the timing of Debtors' petition filing, and the effect of avoiding Ms. Moore's lien on her ability to recover under the Judgment.

    i.   *Mr. Cotton's felony conviction.*

Mr. Cotton was convicted of two counts of child molestation in the first degree under RCW 9A.44.083, a class A felony. Under Washington law, class A felonies are the most serious. *See* RCW 9A.20.021. Ms. Moore is the victim of the exact conduct that gave rise to Mr. Cotton's felony conviction and her judgment resulted from that same conduct. Both the severity of the crime and its impact on Ms. Moore, the objecting party, are relevant to the Court's analysis.

    ii.   *Debtors' financial situation.*

Debtors report a combined monthly income of $1,859.22. Mr. Cotton is unemployed and reports a total monthly income of $244.00 from non-cash governmental assistance. Mr. Cotton's only asset of consequence is the equity in the Real Property, which is Mr. Cotton's separate property. *See* Second SJ Order at ECF Nos. 45 and 46. Ms. Moore's Judgment is by far the largest debt, equating to approximately eighty-five percent of Debtors' total liabilities excluding the mortgage. Ms. Moore's lien is against Mr. Cotton's interest in the Real Property, not Debtors' community assets. Outside of Ms. Moore's Judgment, Debtors' schedules reflect community liabilities of $64,924 consisting of $57,305 of credit card debt incurred between November 2018 and June 2019, and $7,619 of medical debt incurred between April 2015 and November 2019. The size and timing of Ms. Moore's Judgment relative to the total debt suggests that avoiding Ms. Moore's lien was a substantial—if not the primary—motivation in Debtors' decision to file the chapter 7 case.

### iii. Timing of Debtors' bankruptcy filing.

Debtors filed their bankruptcy petition five days after the increased homestead exemption became effective. Pre-bankruptcy planning does not automatically indicate an abuse of the Bankruptcy Code and the Court is not prepared to find that Debtors filed their petition in bad faith. But, had Debtors filed their petition five days earlier, they would have been restricted to a maximum homestead exemption of $125,000. If Debtor's homestead exemption was limited to $125,000, they would have only been able to partially avoid Ms. Moore's lien under § 522(f) and no issue would have arisen under § 522(q). Because the increased homestead exemption would permit the total avoidance of Ms. Moore's judicial lien on the Real Property, it is clear that the timing of the Debtors' chapter 7 filing was intended to maximize the impact that the filing would have on Ms. Moore's ability to collect on her judgment.

### iv. The effect of totally avoiding Ms. Moore's judicial lien.

Ms. Moore's Judgment is secured by a lien on Mr. Cotton's only asset of consequence, the Real Property. If her lien is wholly avoided, she would then hold a non-dischargeable unsecured claim. Mr. Cotton is unemployed, therefore, an attempt to garnish his wages likely would be unsuccessful. Because Mr. Cotton has no other assets of consequence from which Ms. Moore could attempt to collect from, any protection offered by the non-dischargeability of the claim would likely be illusory. Such a result would effectively allow Mr. Cotton to use the Bankruptcy Code to avoid paying any damages to the victim of his sexual abuse.

Conversely, if § 522(q)(1)(A) applies, Ms. Moore's lien would be only partially avoided. She would continue to hold a lien against the Real Property in the amount above the capped exemption. RCW 6.13.070 would preclude Ms. Moore from forcing a sale of the Real Property. However, with a partially secured claim, Ms. Moore will have a chance of recovering a small portion of the Judgment if the Real Property is ultimately sold. Such a result would not deny Debtors a homestead exemption. Instead, Debtors will at a minimum still receive a sizable homestead exemption of $170,350, subject to their ability to argue for the allowance of a greater amount under § 522(q)(2).

Accordingly, under the facts of this case, the use of the bankruptcy filing to wholly avoid Ms. Moore's lien supports a finding of abuse.

**C. Section 522(q)(1)(A) Conclusion.**

Based on consideration of the foregoing, the Court finds that the totality of the circumstances of this case demonstrates that Mr. Cotton's filing of his chapter 7 case is an abuse of the Bankruptcy Code. Therefore, Ms. Moore has carried her burden of establishing her objection under § 522(q)(1)(A) and rebutting the presumption of validity. The burden now shifts to the Debtors to establish whether the savings clause of § 522(q)(2) applies to increase the amount of their exempt interest above $170,350.

**D. Section 522(q)(2).**

The remaining issue is whether Debtors can establish that the § 522(q)(2) savings clause applies to increase the amount of their exempt interest above $170,350. To meet their burden, Debtors must establish that the amount of interest above the cap is reasonably necessary for their support. This issue raises questions of material fact; therefore, it is inappropriate for the Court to address this issue summarily. These remaining questions of material fact must be decided before the Court makes a final ruling on Debtors' motion to avoid Ms. Moore's lien.

## III. CONCLUSION

In conclusion, the Court holds that under the totality of the circumstances, Mr. Cotton's felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code. Ms. Moore has established her burden of proof. Accordingly, the Court grants partial summary judgment to Ms. Moore on the issue of whether, under the facts and circumstances of this case, Mr. Cotton's prior felony conviction demonstrates that the filing of the case was an abuse of the Bankruptcy Code.

Debtors bear the burden of establishing that the § 522(q)(2) savings clause applies to increase the amount of their exempt interest above $170,350 before the Court makes a final ruling on Debtors' motion to avoid Ms. Moore's lien.

The parties should contact Judge Heston's Courtroom Deputy, Samantha Bergeson, at samantha_bergeson@wawb.uscourts.gov to schedule a status conference to discuss how to best proceed in this case in light of the Court's Memorandum Decision.

/ / / End of Memorandum Decision / / /